**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CHRISTOPHER BROWN,**         **CASE NO. 2:06-cv-448**
                                         **JUDGE SMITH**
           **Petitioner,**              **MAGISTRATE JUDGE KEMP**

**v.**

**MICHAEL SHEETS, Warden,**

          **Respondent.**

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. Petitioner also has filed a motion to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts. Doc. No. 24. Respondent opposes petitioner's request. Doc. No. 25. Petitioner has filed a reply to respondent's opposition. Doc. No. 26. For the reasons that follow, petitioner's request to expand the record, Doc. No. 24, is **GRANTED** in part and **DENIED** in part. It is **RECOMMENDED** that this action be **DISMISSED**.

**I.  FACTS AND PROCEDURAL HISTORY**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On May 27, 2004, appellant was indicted in Case No. 04-CR-I-05-231 for six counts of gross sexual imposition and one count of rape arising out of the allegations made by appellant's twelve year old niece, Kimberly Haller.

1

On June 10, 2004, appellant was indicted in Case No. 04-CR-I-06-255 for eighteen sexually related crimes arising out of the allegation made by the appellant's seventeen year old sister-in-law, Lauren Haller. The breakdown of this indictment is as follows: six counts of gross sexual imposition with a victim under age 13 (Counts 13, through 18); three counts of gross sexual imposition by force (Counts 1, 5, and 9); three counts of unlawful sexual conduct with a minor (Counts 2, 6, & 10); three counts of sexual battery (Counts 3, 7, & 11); and three counts of rape (Counts 4, 8, & 12).

In the body of the indictment the counts are grouped together to delineate each incident alleged. For example, Counts 1 through 4 allege one incident with two different types of conduct by the accused, i.e. sexual contact and sexual conduct. Likewise, Counts 5 through 8 allege one incident; and, Counts 9 through 12 allege one incident. As for the remaining counts of the indictment (Six counts of gross sexual imposition), each count represents a single, separate incident.

On August 9, 2004, over the objections of defense counsel, the trial court ordered the two indictments to be consolidated. The underlying factual basis for these indictments is as follows.

On April 8, 2004, Lauren Haller disclosed to her boyfriend's mother, Sandy Thibault, that she had been sexually abused. Unbeknownst to Lauren, Ms. Thibault is a "mandatory reporter" who took the appropriate steps in the State of Minnesota where Lauren now lives to report Lauren's disclosure to the Scott County, Minnesota authorities. Lauren's exchange with Sandy Thibault triggered an investigation that eventually would lead to the questioning of Lauren Haller's niece, Kimberly Haller, in Delaware County, Ohio.

Upon receiving the report from Scott County, Margaret Sodetani, a worker with the Scott County Children's Services, interviewed Lauren Haller. After interviewing Lauren, Ms. Sodetani made arrangements for law enforcement officers in Ohio to consider any possible criminal charges.

Simultaneously to Ms. Sodetani's actions, the Haller family was beginning to learn of Lauren's disclosures. Lauren called Cassie Haller Brown, her half-sister and appellant's wife, to tell her about the sexual abuse. Cassie Brown in turn called her brother and sister-in-law, Craig and Wendy Haller who lived around the block and told

2

them of Lauren's allegations.

Based upon Cassie's phone conversation concerning Lauren's allegations, Wendy Haller questioned her daughter, Kimberly Haller, concerning whether anyone had touched her in her "bath suit area." Kimberly Haller responded: "Kris does." Wendy Haller then informed Cassie Brown that Kimberly had also been abused by appellant.

Kimberly Haller was interviewed by Jenna Kitchen of the Delaware County Department of Jobs and Family Services and Detective Robert Penrod of the Delaware Police Department. During this interview, Kimberly Haller disclosed that the appellant had touched her breast and genitalia during three or four incidents at his home. Kimberly further disclosed that appellant touched her while she was watching television as her sister and her Aunt Cassie slept.

Detective Penrod questioned Kimberly about where exactly the defendant had touched her. To accomplish this, Detective Peron used his hands to simulate the female genitalia. When Detective Penrod observed Kimberly's response he believed penetration had taken place. However, when directly asked about "penetration" Kimberly denied to Detective Penrod that any penetration had taken place.

Detective Penrod interviewed the appellant on May 21, 2004. Appellant denied that any sexual contact had taken place.

At trial Lauren Haller testified that she remembered four separate incidents wherein appellant touched her breasts. One incident occurred when she had a pillow under her head, pretending to be asleep; appellant rubbed her breasts over her clothes. She testified that the same thing happened later that same year. During this incident appellant had to move one of her arms and appellant's hands went underneath her shirt. Again Lauren pretended to be asleep on the couch in the basement. Appellant groped her breasts another time on a small couch in the basement. During this incident, appellant moved the blanket from Lauren, reached under her shirt and bra and fondled her bare breasts. The final groping incident happened in the upstairs living room.

Lauren further testified that once appellant moved out of her father's house to a residence in Delaware County, Ohio, appellant continued to touch her while she stayed at his home. By this time Lauren was over the age of thirteen. Lauren testified that one instance occurred

3

soon after appellant moved to Delaware during her summer visitation with her father. Lauren testified that while she was on the long couch in the family room appellant groped her breasts and put his mouth on her breast. Lauren testified that appellant groped her again while she was asleep on a chair in the family room. During this incident, appellant came up from behind her and reached down her shirt and underneath her bra. During another incident, appellant knelt down by the recliner and reached underneath her shirt putting his mouth on her breast. During this incident appellant also reached up her pant leg and put a finger in her vagina. None of these incidents occurred during the summer of 2003.

Lauren testified as to two instances that occurred during the summer of 2003. One incident occurred in appellant's spare bedroom where she wore a red bra. The other one occurred while she was in the recliner in the living room.

At trial Kimberly Haller testified that appellant had molested her on three or four distinct occasions. During each incident appellant touched her in the "bra area" underneath her bra. Appellant, during two of the incidents also touched her "in between the legs." She testified that the touching started when it was cold and occurred between Christmas and February.

A board certified forensic pathologist, Dr. Jeff Smalldon, testified on behalf of appellant. Dr. Smalldon concluded that the interviewing process with respect to Lauren Haller was tainted.

At the conclusion of voir dire, the trial court permitted the prosecutor to amend the indictment over the objection of defense counsel.

At the conclusion of the State's case, the trial court permitted the prosecutor to amend the Bill of Particulars, again over the objections of defense counsel.

Pursuant to appellant's Crim. R. 29 motion at the end of the State's case, the trial court dismissed the following counts; In Case No. 04-CRI-05-231 (Kimberly Haller's case) counts 4, 6, & 7; in Case No. 04-CRI-06-255 (Lauren Haller's case) counts 17 & 18.

After hearing sixteen witnesses over four days the jury on November 11, 2004 returned guilty verdicts as follows: On Case No. 04-CRI-05-231 (Kimberly Haller's case), the jury found appellant guilty of counts 1, 2, 3, & 5. On Case No. 04-CRI-06-255 (Lauren Haller's

4

case) the jury found appellant guilty of counts 1, 2, 4, 5, 9, 10, 12, 13, 14, 15, & 16.

After the trial, appellant moved for acquittal pursuant to Crim. R. 29 and for a new trial pursuant to Crim. R. 33. Based on appellant's motions, the trial court released the Grand Jury transcripts of Lauren Haller and Kimberly Haller to ensure no variance existed between trial testimony and the evidence presented to the Grand Jury. On January 6, 2005 the trial court ruled on appellant's post-trial motions. Specifically, the trial court ruled that Count 9 in Case No. 04-CRI-06-255 (Lauren Haller's case) be dismissed because it was not the same incident that the Grand Jury had heard and was a separate incident. Appellant's motion for a new trial was denied.

On January 24, 2005, the trial court sentenced appellant to an aggregate sentence of 12 years. The court also imposed a fine of $2,000.

Exhibit R to Return of Writ.  Represented by new counsel, petitioner filed a timely appeal.  He

asserted the following assignments of error:

I. THE PROSECUTOR ERRED WHEN SHE FAILED TO PROVIDE DEFENSE COUNSEL WITH A COPY OF KIMBERLY HALLER'S GRAND JURY TESTIMONY PRIOR TO TRIAL.

II. THE TRIAL COURT ERRED WHEN IT DID NOT GRANT APPELLANT'S MOTION TO COMPEL DISCOVERY AS TO LAUREN AND KIMBERLY HALLER'S COUNSELLING [SIC] RECORDS.

III. THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO AMEND THE INDICTMENT ON THE FIRST DAY OF TRIAL AND TO AMEND THE BILL OF PARTICULARS UPON CONCLUSION OF THE STATE'S CASE IN CHIEF.

IV. THE TRIAL COURT ERRED WHEN IT DID NOT CONTINUE THE PROCEEDING AFTER IT PERMITTED THE PROSECUTOR TO AMEND THE INDICTMENT AND THE ALREADY AMENDED BILL OF PARTICULARS.

V. THE TRIAL COURT ERRED WHEN IT ORDERED THAT THE

5

INDICTMENTS BE CONSOLIDATED.

VI. THE ACTS AND OMISSIONS OF TRIAL COUNSEL DEPRIVED CHRISTOPHER BROWN OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

*Id.;* Exhibit O to Return of Writ. On October 20, 2005, the appellate court affirmed the judgment of the trial court. Exhibit R to Return of Writ. Still represented by counsel, petitioner filed a timely appeal. He raised the following propositions of law:

> 1. A prosecutor must disclose grand jury testimony which contains exculpatory information.

> 2. When requested by a defendant, a trial court must conduct an in camera review of the victim's counseling records.

> 3. A trial court should order the release of all records which are necessary for an expert, who is retained by the defense, to reach or support a conclusion concerning a material issue.

> 4. A defendant in a criminal case is entitled to adequate notice to defend against the charges lodged against him.

> 5. A trial court should grant a continuance when defense counsel is unprepared to go forward because the prosecutor amended the indictment or bill of particulars during the course of the trial.

> 6. A court should not consolidate cases involving sexual offenses unless the witnesses and evidence will be the same.

> 7. Defense counsel fails to provide the constitutionally guaranteed right to effective assistance of counsel when counsel's performance is deficient and the defendant is prejudiced by that performance.

Exhibit S to Return of Writ. On March 8, 2006, the Ohio Supreme Court denied leave to appeal and

dismissed the appeal as not involving any substantial constitutional question.  Exhibit U to Return of Writ.

Again represented by counsel, on June 9, 2006, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  Christopher Brown's convictions are constitutionally infirm because the trial prosecutor failed to provide defense counsel with exculpatory evidence.

> 2.  Christopher Brown's convictions are constitutionally infirm because the trial court refused to conduct an in camera review of Lauren and Kimberly Haller's counseling records and Lauren Haller's recorded statement to the Minnesota case worker.

> 3.  Christopher Brown's convictions are constitutionally infirm because the trial court refused to order the release of the audio tape of the initial interview of Lauren Haller.

> 4.  Christopher Brown's convictions are constitutionally infirm because the trial court permitted the two indictments to be consolidated.

> 5.  Christopher Brown's convictions are constitutionally infirm because the trial court permitted the prosecutor to amend the indictment on the first day of trial and the bill of particulars upon conclusion of the State's case in chief, thereby depriving him of adequate notice.

> 6.  Christopher Brown's convictions are constitutionally infirm because the trial court refused to continue the proceeding after it permitted the prosecution to amend the indictment and the amended bill of particulars.

> 7.  Christopher Brown's convictions are constitutionally infirm

because trial counsel failed to provide him with reasonable effective assistance of counsel.

It is the position of the respondent that petitioner's claims are without merit.

## II.  PETITIONER'S MOTION TO EXPAND THE RECORD

Petitioner has filed a motion to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts.  Petitioner seeks to expand the record before this Court to include the transcript of alleged victim Lauren Haller's initial statement to police, and the affidavit of defense attorney Jon J. Saia, in support of habeas corpus claims three and seven, wherein petitioner asserts that  he was denied the right to present a defense because the trial court refused to order pre-trial disclosure of Lauren Haller's initial audio taped statement to investigating authorities, and the ineffective assistance of counsel due to trial counsel's failure to file motion to suppress Lauren Haller's testimony as tainted by unduly suggestive interview techniques and failure obtain a copy of the tape in its entirety for pre-trial review by defense expert Jeff Smalldon.[1] *Petitioner's Rule 7 Motion, Exhibits A and B*.

In his affidavit, Saia states that

the prosecutor's release of the transcript of Ms. Haller's statement was too late to be of any benefit

---

[1]  It does not appear that this latter claim was presented to the state courts, nor is such claim raised as an independent allegation of ineffective assistance of counsel in these habeas corpus proceedings.  Although petitioner does argue that his attorney should have provided a copy of Lauren Haller's entire initial statement to defense expert Smalldon prior to trial, *Petition,* ¶88, this allegation is made in conjunction with his claim that he was denied the effective assistance of counsel due to his attorney's failure to file a motion to suppress Lauren Haller's statement as made pursuant to unduly suggestive interview techniques. *See id.*, at 24, "Defense Counsel Failed to File a Meritorious Motion to Suppress".

and that he was unable to use the transcript of Haller's initial statement

for purposes of trial preparation and cross examination of the witness.

*Affidavit of Jon J. Saia, Exhibit B to Petitioner's Rule 7 Motion.*  Saia also states:

It is my opinion... that the prosecutor's failure to timely disclose the initial transcript precluded me from effectively representing the petitioner.  I was deprived of a valuable tool for cross examining Ms. Haller.

*Id.*

Petitioner contends that this Court must review the transcript of Lauren Haller's statement

in order to resolve whether the trial court's failure to order pre-trial disclosure of Haller's statement

constituted harmless error, and whether petitioner was prejudiced by counsel's failure to obtain a

copy of the entire tape for defense expert Smalldon's review.  *Motion to Expand Record*, at 2.

Respondent opposes petitioner's request.

Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts

provides:

(a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

(b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

(c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness

9

The proscriptions of 28 U.S.C. §2254(e)(2), apply when determining whether to expand the record to include evidence that was not considered by the state courts:

> While §2254(e)(2) refers only to evidentiary hearings, it governs as well "[w]hen expansion of the record is used to achieve the same end as an evidentiary hearing." *Boyko v. Parke,* 259 F.3d 781, 790 (7th Cir.2001); *see Dorsey v. Chapman,* 262 F.3d 1181, 1190 (11th Cir.2001), *cert. denied,* 535 U.S. 1000, 122 S.Ct. 1567, 152 L.Ed.2d 489 (2002).

*Cargle v. Mullin,* 317 F.3d 1196, 1209 (10th Cir. 2003)(citations omitted).

28 U.S.C. §2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.*

> Diligence... depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court... Though lack of diligence will not bar an evidentiary hearing if efforts to discover the

10

> facts would have been in vain, *see* 2254(e)(2)(A)(ii), and there is a convincing claim of innocence, *see* § 2254(e)(2)(B), only a prisoner who has neglected his rights in state court need satisfy these conditions. The statute's later reference to diligence pertains to cases in which the facts could not have been discovered, whether there was diligence or not.

*Williams v. Taylor*, 529 U.S. 420, 435 (2000).  *See also Holland v. Jackson*, 542 U.S. 649 (2004)(reversing decision of the United States Court of Appeals for the Sixth Circuit granting the petition for a writ of habeas corpus on the basis of evidence not considered by the state courts); *Bradshaw v. Richey*, 546 U.S. 74 (2005)(Error for habeas court to consider evidence not presented to state courts without first determining whether petitioner was at fault for failing to develop factual bases for claim, or whether criteria of 28 U.S.C. §2254(e)(2) were satisfied).

Petitioner properly raised on appeal the same claims that he asserts in these federal habeas corpus proceedings.  The transcript of Lauren Haller's initial statement to investigating authorities was attached to the State's memorandum contra to petitioner's motion for a new trial, in which petitioner argued that the prosecutor failed properly to comply with discovery and that he was denied a fair trial and the ability to defend the charges against him.  *See* Exhibits H - M to Return of Writ.  Thus, Haller's initial statement to authorities, at least at one point in time, was a part of the record and considered by the state courts in adjudication of petitioner's claim that the prosecutor had improperly failed timely to disclose her statement.  This Court therefore will consider such evidence in conjunction with this same claim here.  Defense counsel's affidavit, however, has neither been presented to or considered by the state courts in conjunction with any of petitioner's claims.  Petitioner may not now expand the record to include such affidavit.  The Court notes however, as more fully described below, that consideration of neither of the foregoing documents alters the

outcome of these proceedings, in any event.

Petitioner's request to expand the record to include the transcript of Lauren Haller's statement therefore is **GRANTED;** his request to expand the record to include an affidavit from defense counsel is **DENIED.**

### III.  CLAIMS ONE and FIVE

These claims were considered together by the state appellate court, and therefore are addressed together here.  In claim one, petitioner asserts that he was denied a fair trial because the prosecutor failed  to disclose exculpatory evidence, *i.e.* the grand jury testimony of alleged victim Kimberly Haller.  Petitioner argues that Kimberly Haller's trial testimony differed from her grand jury testimony, and that without prior access to her grand jury testimony, he was precluded from effectively cross examining Haller at trial.

The state appellate court rejected this claim as follows:

> In his First Assignment of Error appellant maintains that the State was obligated to provide the appellant with the grand jury testimony of Kimberly Haller because the testimony was favorable to the defense. The thrust of appellant's argument is that Kimberly's testimony at trial concerning the dates of the alleged incidents was inconsistent with her grand jury testimony. In his Third Assignment of Error appellant contends that the trial court erred in permitting the State to amend the Indictment as to Counts Nine through Twelve in Lauren Haller's case on the first day of trial to extend the applicable time period by two years, and further in permitting the State to amend the Bill of Particulars at the conclusion of the State's case to expand the applicable time periods in Kimberly Haller's case and to change Count Four from fondling the breast of Kimberly Haller to fondling her genitals. We will address these assignments of error together because the issues are interrelated.
>
> Prior to trial, the court granted appellant's request to have the grand jury testimony transcribed and available if needed at trial. (Judgment

Entry Granting Defendant's Motion for Witness Statements, filed Sept. 22, 2004). Although trial counsel never formally requested an opportunity to review the grand jury testimony of Kimberly or Lauren, the trial court did note: "I read the Grand Jury testimony. It's not inconsistent with what was testified to here. Certainly we'll make it a part of the record for appeal purposes and you can place that argument before the Court of Appeals." (T. at 713).

Subsequent to the appellant's jury trial and conviction, appellant renewed his request to release the Grand Jury Transcripts of both Kimberly and Lauren Haller by motion filed November 24, 2004. This request was made in conjunction with appellant's requests for a Judgment of Acquittal, and Motion for a New Trial filed the same date. In its Judgment Entry filed December 14, 2004, the trial court released the transcripts to appellant's trial counsel. The trial court noted that the issue raised by appellant's motions was "whether the Counts in the Indictment, some as amended, reflect the testimony heard by the Grand Jury." (Id.). The Court found that appellant "should review the Grand Jury testimony to enable him a fair adjudication of the issues contained in his motions." (Id.).

The trial court overruled appellant's motion for acquittal and new trial by Judgment Entry filed January 6, 2005.

In his appeal before this court, appellant first contends that the Grand Jury testimony is inconsistent with the statement Kimberly made to Detective Penrod concerning the dates of the offenses.

On May 14, 2004 Kimberly Haller was interviewed by Detective Robert Penrod of the Delaware City Police Department. (T. at 409-10). According to Detective Penrod's written summary of the interview, Kimberly told Detective Penrod that there were three instances of sexual abuse. (See, State of Ohio's Supplemental Memorandum Contra Defendant's Motion for Acquittal and for New Trial, filed Jan 4, 2005 at Exhibit 3, p. 5). The first incident occurred on a weekend after Christmas of 2003, but Kimberly was unsure of whether it was during the month of December or January. (Id.) Kimberly told Detective Penrod that appellant had touched both of her breasts on this occasion. (Id.). The second incident occurred after the first incident but before Valentine's Day. (Id.). On this occasion appellant fondled her breast and her genitilia [sic]. (Id.). The third incident occurred after St. Patrick's Day but before Easter. On this occasion appellant fondled her breast, genitilia [sic] and, according to Detective Penrod, appellant digitally penetrated Kimberly. (Id.). At

13

trial Detective Penrod testified that Kimberly had stated that appellant did not penetrate her. (T. at 417). However, he apparently drew his conclusion that penetration occurred from a gesture he made to Kimberly using his hands to represent the female genitilia [sic]. (Id.).

On May 26, 2004 Kimberly Haller testified before the Delaware County Grand Jury. Kimberly testified that appellant touched her "chest and in between the legs." (Grand Jury Testimony of Kimberly Haller at 4). She testified that this conduct occurred three different times. (Id. at 6). Kimberly was unsure of the specific dates of each incident. (Id. at 4). She believed that the first incident occurred around Christmas, 2003. (Id. at 7). The second incident occurred after Christmas. (Id). The third incident occurred in January after Christmas. (Id.). Kimberly further testified that she did not remember if any of the incidents were near Valentine's Day or St. Patrick's Day. (Id. at 7).

On May 27, 2004 appellant was indicted by the Delaware County Grand Jury with seven counts relative to Kimberly Haller. Each count was alleged to have occurred "during the period of December 1, 2003 through April 15, 2004." In response to appellant's request for a more specific time period, the State filed a Bill of Particulars on October 20, 2004. The Bill of Particulars maintained the time period of December 1, 2003 through April 15, 2004. However with respect to Count One the time period was further specified as "sometime before Christmas 2003." Count 2 was further specified as occurring "after the first incident but before Valentine's Day 2004." Counts Three and Four were further specified as "after Christmas 2003." Counts Five, Six and Seven were specified as "after St. Patrick's Day, but before Easter 2003." The Bill of Particulars did not expand the time period set forth in the Indictment. In other words, the incidents, even with the more specific allegations concerning the dates, were all alleged to have occurred during the period of December 1, 2003 through April 15, 2004.

Kimberly Haller testified during appellant's jury trial on November 5, 2004. At trial Kimberly testified that she was not sure about the exact dates:" Like it was in between Christmas and like, I think March ... [because I remember Christmas lights and-wait, I remember Valentine's Day. So it wasn't quite March, I don't think." (T. at 366). Kimberly testified that on the first two occasions appellant fondled her breasts and genitilia, [sic] but on the third occasion he fondled her breasts but did not touch her genitilia [sic].

14

On November 9, 2004 the State filed a Second Amended Bill of Particulars. With respect to the charges involving Kimberly Haller all seven counts were alleged to have occurred "during the time period of December 1, 2003 through April 15, 2004." In other words, the Second Amended Bill of Particulars mirrored the original time frame set forth in the Indictment. Appellant claims on appeal that the "jury should have heard the contents of Kimberly Haller's grand jury testimony and compared it to her initial statement for purposes of evaluating her credibility". (Appellant's Brief at 7). In his Third Assignment of Error, appellant contends that expanding the time periods for all the offenses in both Kimberly and Lauren's cases modified the essential facts supporting the charges.

Appellant first points to the different time period that Kimberly alleged the incidents took place in her initial statement to Detective Penrod and her grand jury testimony. Appellant further notes that Kimberly did not allege penetration during her grand jury testimony. Appellant claims that this is favorable evidence bearing on the credibility of the State's witness therefore the State was obligated to provide the information to the appellant pursuant to *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Appellant further argues that expanding the time period by two years in Lauren's case was prejudicial.

\*\*\*

In the case at bar, Kimberly's testimony has been unwavering in two respects. First she has consistently alleged that the incidents occurred on three separate occasions. Second, that each incident occurred between December 2003 and February-March, 2004. She testified to these dates during her trial. Appellant was in possession of Detective Penrod's report and had every opportunity to question her regarding the difference in the dates. In reality the only difference is the particular month that each incident occurred. In the instant case, the testimony of Kimberly placed the offenses within the general time frame of the dates specified in the indictment and the bill of particulars. Her trial testimony was consistent with her grand jury testimony.

As an allowance for reasonableness and inexactitude is permissible it can hardly be argued that the difference in which particular month during the relevant time frame set forth in the indictment each particular act occurred is "exculpatory" or "favorable" evidence to the accused so as to place a duty upon the State to disclose the information.

15

> With respect to the expansion of the time period in Lauren's case, trial counsel tacitly admitted that he knew the indictment contained a typographical error concerning the dates of the offenses. (T. at 1-13). The dates on which the amendment was based were available and provided to appellant in the report of Detective Penrod and the social worker's narratives. A review by this court of Lauren's grand jury testimony and Detective Penrod's report substantiates that the grand jury heard evidence of sexual abuse occurring during the time period as set forth in the amendment. Appellant's defense was that the incidents did not occur at any time. Appellant did not file a notice of alibi for any of the time period set forth in the original indictment. The inexactitude of temporal information did not truly prejudice the appellant's ability fairly to defend himself.

Exhibit R to Return of Writ; *State v. Brown*, 2005 WL 2727129 (Ohio App. 5 Dist. October 20, 2005).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id*. Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established federal law or was based on an unreasonable determination of the facts of record. 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

16

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* 28 U.S.C. § 2254(d).

According to petitioner, this Court must conduct a *de novo* review, because the state appellate court failed to address his claim as one of constitutional magnitude. *Traverse*, at 15.

> There are three options: the deferential standard [or review] provided under §2254(d); the *de novo* standard, and the "intermediate approach." *See Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir.2003) *(de novo );* *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001) (discussing alternate standards); *McKenzie v. Smith,* 326 F.3d 721, 726-27 (6th Cir.2003), *cert. denied,* 540 U.S. 1158, 124 S.Ct. 1145, 157 L.Ed.2d 1057 (2004) (same); *Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir.2005) (same). The gist of circuit precedent is that when there is a decision, deference is accorded under §2254(d) to the state court decision under the "intermediate approach." *Maldonado v. Wilson,* 416 F.3d 470, 476 (6th Cir.2005); *Howard,* 405 F.3d at 467. When there is no decision or "no results," federal review is *de novo. See Wiggins v. Smith,* 539 U.S. at 534, 123 S.Ct. at 2542 (*de novo* when there was no state court decision on second prong of *Strickland* test). When the state court has failed to articulate a decision or provide a rationale, the district court must distinguish between a situation of "no results" from that of "no reasoning". *Howard v. Bouchard,* 405 F.3d at 467; *McKenzie,* 326 F.3d at 727. As illustrated in McKenzie, the "no reasoning" situation occurs when the state court has issued a summary order, which fails to explain its reasoning, as opposed to the situation where no state court has "directly addressed the specific issue." In the latter situation there are "no results" for the federal court to defer, and de novo review by the federal court is required. See *Wiggins v. Smith,* 539 U.S. at 534, 123 S.Ct. at 2542; *McKenzie,* 326 F.3d at 727.

*Socha v. Wilson*, 447 F.Supp.2d 809, 819 (N.D. Ohio 2007).

Here, the state appellate court recognized that petitioner raised an issue under *Brady v. Maryland, supra;* but referred solely to state law in rejecting his claim.  Arguably, therefore, this

17

Court must conduct an "intermediate" standard of review. Regardless, however, of whether this Court conducts an intermediate or more deferential standard of review, the Court reaches the same conclusion. Petitioner's claim is without merit.

### A. CLAIM ONE: FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

In *Brady v. Maryland, supra,* the United States Supreme Court held that

> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady v. Maryland, supra,* 373 U.S. at 86. Evidence is material

> [i]f there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*United States v. Bagley,* 473 U.S. 667, 682 (1985).

> [T]here is never a real " *Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

*Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *O'Guinn v. Dutton,* 88 F.3d 1409, 1418 (6 Cir.1996), citing *United States v. Bagley, supra.*

Grand jury proceedings are subject to a general rule of secrecy and may not ordinarily be disclosed. *Garrett v. Moore*, 2007 WL 315093 (S.D. Ohio January 30, 2007)citing *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399 (1959); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681 (1958); *see also United States v. Hayes*, 376 F.Supp.2d 736, 739 (E.D. Mich. May 27, 2005).

The decision whether to disclose grand jury testimony ... is entrusted

> to the discretion of the court. *United States v. Short, supra,* 671 F.2d at 184. However, that discretion is not absolute, *id.,* and before disclosure is ordered, the defendant must show a "compelling necessity" for breaking the "indispensible secrecy of grand jury proceedings." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Short, supra,* at 184. A compelling necessity is shown by demonstrating a "particularized need" for the disclosure. *Procter & Gamble* at 683, 78 S.Ct. 983.

*Id.*

> [D]isclosure of a grand jury transcript may be required if shown that the "defense would be greatly prejudiced or that without reference to it an injustice would be done," such as where "use of the grand jury transcript at trial [is necessary] to impeach a witness, to refresh his recollection, to test his credibility and the like." ... "Those are cases of particularized need where the secrecy of the [grand jury] proceedings is lifted discretely and limitedly."

*Garrett v. Moore, supra,* quoting *Procter & Gamble, supra*, 356 U.S. at 683.

Petitioner argues that the jury's not guilty verdict on three of the charges against him shows that this was a close case, and disclosure of Kimberly Haller's grand jury testimony would have exonerated him, particularly in view of the lack of corroborating physical evidence and because Kimberly Haller's credibility was determinative to a finding of guilt. He further contends that the trial court made inconsistent statements as to whether Kimberly Haller's grand jury testimony differed from her trial testimony. *Traverse*, at 17.

This Court is not persuaded by petitioner's arguments. Contrary to the argument of petitioner, the trial court did not vary in its statements regarding the differences in Kimberly Haller's testimony to the grand jury and at trial. Rather, the trial court stated (in response to defense counsel's objections to the prosecutor's second amended Bill of Particulars):

> The testimony of the girls, not only here in court, but in the grand jury, there was a lack of specificity. So, yes, it was confusing.

*Transcript*, at 711.  The trial court also stated (in response to defense counsel's request that grand

jury testimony be made a part of the record and a request "to go through each of the counts and show

the inconsistencies that ha[ve] been brought forward throughout this trial with regard to what was

testified to a grand jury"):

> I read the grand jury testimony.  It's not inconsistent with what was
> testified to here.

*Id*., at 712-13.  The state appellate court agreed:

> Her trial testimony was consistent with her grand jury testimony.

Exhibit R to Return of Writ.  The state appellate court further stated that Kimberly's testimony was

"unwavering" as she "consistently alleged that the incidents occurred on three separate occasions"

and "that each incident occurred between December 2003 and February-March 2004." Additionally,

the state appellate court held:

> [Kimberly Haller] testified to these dates during her trial. Appellant
> was in possession of Detective Penrod's report and had every
> opportunity to question her regarding the difference in the dates. In
> reality the only difference is the particular month that each incident
> occurred. In the instant case, the testimony of Kimberly placed the
> offenses within the general time frame of the dates specified in the
> indictment and the bill of particulars. Her trial testimony was
> consistent with her grand jury testimony.

Exhibit R to Return of Writ.  As discussed, these findings of fact are presumed to be correct.

Further, the record does not reflect that the state courts' factual findings were unreasonable.  28

U.S.C. §2254(e).  Review of the record fails to demonstrate  that Kimberly Haller's grand jury

testimony constituted material exculpatory evidence under the standard set forth in *Brady* and its

progeny. *See United States v. Jones,* 766 F.2d 994, 998 n. 1 (6 Cir.1985), *cert. denied,* 474 U.S.

1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985)("In the absence of prejudice, even assuming a violation

of *Brady,* reversal is not required."), citing *United States v. Campagnuolo,* 592 F.2d 852, 861 & n.

9 (5th Cir.1979).

> There are three components of a true *Brady* violation: The evidence
> at issue must be favorable to the accused, either because it is
> exculpatory or because it is impeaching; that evidence must have
> been suppressed by the [government], either willfully or
> inadvertently; and prejudice must have ensued." *Strickler v. Greene,*
> 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).
> Favorable evidence is material for *Brady* purposes "if there is a
> reasonable probability that, had the evidence been disclosed to the
> defense, the result of the proceeding would have been different."
> *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87
> L.Ed.2d 481 (1985); *see also Jamison v. Collins,* 291 F.3d 380, 385
> (6 Cir.2002)("The prejudice (or materiality) element of a *Brady*
> violation is established if there is a reasonable probability of a
> different outcome of the trial had the *Brady* material been available.")
> For purposes of determining reasonable probability, "[t]he question
> is not whether the defendant would more likely than not have
> received a different verdict with the evidence, but whether in its
> absence he received a fair trial, understood as a trial resulting in a
> verdict worthy of confidence." *Kyles v. Whitley,* 514 U.S. 419, 434,
> 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

*Castleberry v. Brigano,* 349 F.3d 286, 291 (6 Cir.2003).  For the reasons discussed by the state

appellate court, petitioner simply has failed to meet this standard here.

### B.  CLAIM FIVE – AMENDING THE INDICTMENT

In claim five, petitioner asserts that he was denied adequate notice of the charges against him

because the trial court permitted the prosecutor to amend the indictment on the first day of trial and

the Bill of Particulars upon conclusion of the State's case against him.  This claim was rejected by

the state appellate court, as discussed above.  Again, petitioner contends that the state appellate court

failed properly to address his federal constitutional claim.  Again, however, regardless of whether

this Court conducts a *de novo* or more deferential standard of review under the AEDPA, petitioner's claim is without merit.

Due process requires that an indictment contains the elements of the offense charged, provides sufficient notice of the charges, and protects the defendant against double jeopardy. *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir.2005), citing *Russell v. United States*, 369 U.S. 749, (1962).

> [W]hatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense. *See, e.g., In Re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir.1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir.1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Combs v. Tennessee*, 530 F.2d at 698.

*Koontz v. Glossa, supra*, 731 F.2d at 369. Such were the circumstances in this case.

On the first day of trial, the trial court permitted the prosecutor to amend the indictment to change the dates of the alleged offenses in counts nine through twelve of the indictment in Case Number 04CR-I-06-255 (involving alleged victim Lauren Haller), from alleging that illegal conduct occurred between June 1, 2003, and September 1, 2003, to alleging that the illegal conduct occurred between June 1, 2001, and September 1, 2003. *See* Exhibit B to Return of Writ; *Transcript*, at 7-15. Petitioner's claim as it relates to count nine is moot, since the trial court granted his motion for judgment of acquittal on that charge. *See* Exhibits L and M to Return of Writ. As to the counts ten through twelve, the dates were changed due to a typographical error. *See Transcript*, at 3-15; Exhibit M to Return of Writ. Amendment of the indictment to expand the dates of the sexual crimes

alleged is permitted under Ohio law, and, as noted by the state trial court, did not prejudice

petitioner, since he did not present an alibi or any other defense that rested on the precise dates and

times of the alleged offenses, but rather argued that the conduct alleged never took place.  *See, e.g.,*

*Shafer v. Wilson*, unpublished, 2007 WL 315760 (N.D. Ohio January 30, 2007)(no prejudice under

*Strickland v. Washington*, 466 U.S. 668 (1984), for failure to object to amendment of indictment in

sexual abuse case to expand dates of alleged crimes.)

> The time of an offense is not an essential element that needs to be proven by the prosecution, but the time of the crime may implicate due process concerns, such as whether a late amendment to an information deprives a defendant of adequate notice of the charge or denies him an opportunity to present a defense. See *Scott v. Roberts,* 777 F.Supp. 897, 900 (D.Kan.1991).

> ***

> [S]everal courts have rejected... claims that a state court information was fatally defective because it failed to allege a precise date or dates that a sexual assault against a child victim occurred. In *Fawcett v. Bablitch,* 962 F.2d 617, 618-19 (7th Cir.1992), the United States Court of Appeals for the Seventh Circuit held that a criminal information which alleged that the habeas petitioner's sexual contact with the minor victim occurred over a six month period gave the petitioner sufficient notice to defend the charges against him. The Seventh Circuit acknowledged the difficulty of providing an alibi for a lengthy period of time, but reasoned that the allegations contained in the information were sufficient for the petitioner to challenge the child victim's veracity and memory, and the petitioner could also deny committing the offenses. *Id.*

> In *Brodit v. Cambra,* 350 F.3d 985, 988-89 (9th Cir.2003), the United States Court of Appeals for the Ninth Circuit held that a California law which allowed a prosecutor to charge a a habeas petitioner with three or more acts of child sexual abuse on unspecified dates between June 12, 1992 and December 31, 1994 did not deprive him of notice and a fair opportunity to respond to the state's charges in violation of due process. The Ninth Circuit cited to *People v. Jones,* 51 Cal.3d

294, 270 Cal.Rptr. 611, 792 P.2d 643 (Cal.1990), in which the California Supreme Court observed that a defendant could prepare an adequate defense even though child sexual abuse allegations spanning a lengthy period of time could preclude an alibi defense. The California Supreme Court "reasoned that credibility is typically the major issue in child abuse cases, with most defendants denying not just specific incidents on specific dates, but denying that any abuse ever occurred at all." *Brodit,* 350 F.3d at 988 (citing *Jones,* 51 Cal.3d at 319, 270 Cal.Rptr. 611, 792 P.2d 643). The Ninth Circuit further noted that defendants "can take advantage of a variety of effective defenses even in the absence of specific dates; for example, they can testify and deny the allegations, advance positive character evidence, develop evidence of a child's motive to lie, and show alibis for some incidents that, if credible, could cast doubt on the child's entire account." *Id.* at 988-89, 270 Cal.Rptr. 611, 792 P.2d 643 (citing *Jones,* 51 Cal.3d at 320, 270 Cal.Rptr. 611, 792 P.2d 643).

*Turner v. Romanowski,* 2007 WL 496672 (E.D. Michigan February 13, 2007).

Here, defense counsel "tacitly admitted" he knew the indictment contained a typographical error.  *See* Exhibit R to Return of Writ.

> [Prosecutor]: This is a typo.  I tried to make the Bill of Particulars as specific as I could.  We were relying on police records that Mr. Saia already had, narratives from social workers, which Mr. Saia already had.... [T]he incidents in June 2001 through that time period occurred on her visitations over summer break and Christmas Break, when she would spend time at the defendant's house here in Delaware.... It doesn't change the allegations, and quite frankly, it's a typo.

> Now, as to his clam of prejudice not knowing the time period, he's had the police report where it's alleged to have occurred over and over from 1998 through 2003.  He's had the social worker's narratives that go through everything about when these events occurred and how long they lasted, when they ended and more importantly, he had an opportunity to speak to both victims.... He declined to do that.

*Transcript*, at 9-10.  Under these circumstances, petitioner cannot establish that he was denied fair notice of the charges or the ability to present a defense by amendment of the indictment prior to trial

to change the dates of the crimes charged in counts ten through twelve to coincide with victims'

statements that had been provided in discovery.

> A defendant cannot show that an imprecise indictment or information amounts to the deprivation of the constitutional right to adequate notice of the charges against him by merely establishing that the presentation of his defense was made more burdensome or difficult. *See State v. Mancinone,* 15 Con.App. 251, 258, 15 Conn.App. 251, 545 A.2d 1131 (Con.App.1988) (charges that the defendant violated a statute by engaging in sexual activity with juveniles and by providing them with alcohol and illegal drugs at two locations between August 1982 and November 1984 were constitutionally sufficient, despite the defense claim that the charges were too vague to allow defendant to establish the defenses of alibi and impossibility or to show that victims' conduct conflicted with their testimony).

*Turner v. Romanowski*, *supra.*  Further, petitioner does not indicate, and the record does not reflect,

in what manner he was denied fair notice of the charges or the right to present a defense by

amendment of the Bill of Particulars at the close of the State's case.  Unfortunately, neither of the

Bills of Particulars provided by the prosecutor have been made a part of the record before this Court.

However,

> [T]he State generally ***may*** amend an indictment or bill of particulars, even after trial for the purpose of conforming to the evidence, so long as "no change is made in the name or identity of the crime charged." Ohio Crim. R. 7(D); *see also State v. Daniel,* 97 Ohio App.3d 548, 647 N.E.2d 174, 180 (1994); *State v. Madden,* 15 Ohio App.3d 130, 472 N.E.2d 1126, 1128-29 (1984). From these principles, it readily follows that the sorts of details supplied in a bill of particulars typically do not qualify as elements of the offenses charged in an underlying indictment. *See, e.g., State v. Sellards,* 17 Ohio St.3d 169, 478 N.E.2d 781, 783-84 (1985) (distinguishing between an indictment, in which the State "aver[s] all material facts constituting the essential elements of an offense," and a bill of particulars, which serves to "elucidate or particularize the conduct of the accused alleged to constitute the charged offense").

> As an example, the Ohio courts have concluded in a number of cases

that precise dates and times were not elements of the charged offenses, and thus need not have been set forth in the indictment. *See, e.g., State v. Lawrinson,* 49 Ohio St.3d 238, 551 N.E.2d 1261, 1262 (1990); *State v. Grewell,* 45 Ohio St.3d 4, 543 N.E.2d 93, 98-99 (1989); *Sellards,* 478 N.E.2d at 785; *Daniel,* 647 N.E.2d at 180. Rather, such information must be provided only upon a defendant's request for a bill of particulars-and, even then, only if "the state possesses the specific information requested by the accused" and this information "is material to the defendant's ability to prepare and present a defense." *Lawrinson,* 551 N.E.2d at 1262. If ...the State provides more detailed allegations in a bill of particulars that differ from the evidence at trial, this discrepancy does not elevate these additional details into "elements" that must have been included in the indictment. *See State v. Webb,* 72 Ohio App.3d 749, 596 N.E.2d 489, 491 (1991). Instead, the discrepancy is properly characterized as a mere variance, and the relevant question is whether the defendant was prejudiced by this variance. *See Grewell,* 543 N.E.2d at 99 & n. 9; *Daniel,* 647 N.E.2d at 180-81; *Webb,* 596 N.E.2d at 490-91.

\*\*\*

As the Supreme Court has explained, such a variance in proof warrants the reversal of a conviction only if it "affect[s] the substantial rights of the accused." *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935) (internal quotation marks omitted); *see also Chilingirian,* 280 F.3d at 712; *United States v. Zelinka,* 862 F.2d 92, 97 (6th Cir.1988). A defendant's substantial rights are affected where he is "prejudicially surprised" by the variance, or where it otherwise "prejudice[s] the fairness of [the defendant's] trial." *United States v. Miller,* 471 U.S. 130, 134-35, 105 S.Ct. 1811, 1814, 85 L.Ed.2d 99 (1985); *see also United States v. Ragen,* 314 U.S. 513, 526, 62 S.Ct. 374, 380, 86 L.Ed. 383 (1942); *Berger,* 295 U.S. at 82, 55 S.Ct. at 630; *Zelinka,* 862 F.2d at 97.

*Geboy v. Brigano.*489 F.3d 752, 762-64 (6th Cir. 2007)(footnote omitted).   Petitioner has not met

this standard here.  As noted, petitioner's "defense was that the incidents did not occur at any time."

*Id.*  He was able to present such defense as well as challenge the credibility of the alleged victims

on the dates and the events at issue through cross-examination.

26

Lauren Haller admitted on cross examination that she could not recall the specifics of anything that took place during any of the incidents in question. *Transcript*, at 77-81. She said "all the years... flow together." *Id.*, at 77. Lauren told her mother she was not sure if she had dreamed the events in question. *Id.*, at 137. She came to Ohio to visit her father, but asked to stay with Cassie after and during the time in which she alleged that petitioner, who lived with Cassie, was sexually molesting her. *Id.*, at 84. Her description of the details of what had happened had changed. *Id.*, at 86. According to Lauren, during at least two of the incidents, her sister, Brittany, had been sleeping only two or three feet away. *Id.*, at 91. Likewise, on each of the incidents alleged by Kimberly Haller, at least two other people were in the room. *Id.*, at 114. Kimberly had not told either Detective Penrod or Jenna Kitchen the "whole story." *Id.*, at 144. Kimberly did not know how often she had spent the night at petitioner's house, or on what dates the alleged incidents took place. *Id.*, at 145-149.

The record does not reflect that petitioner was denied due process nor the right to present a defense by pre-trial amendment of the indictment to correct the dates of the crimes alleged or amendment of Bill of Particulars to conform to the evidence after trial. Claim five is without merit.

## IV.  CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial because the trial court refused to conduct an *in camera* review of Lauren and Kimberly Haller's counseling records and Lauren Haller's recorded statement to the Minnesota case worker. The state appellate court rejected this claim as follows:

> [A]ppellant contends that the trial court erred in not conducting an in camera review of Lauren and Kimberly's follow-up therapeutic counseling records to determine whether those records contained

27

evidence favorable to the appellant. Appellant further claims he was denied an opportunity to present a defense because the trial court did not allow him access to an audio tape interview of Lauren Haller. Appellant contends that the information was necessary for his expert witness to reach a conclusion on the issue of suggestibility of the child, or "taint" in the interview process. We disagree.

Under certain circumstances, a defendant is entitled to have confidential records reviewed *in camera* by the trial court. *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 58, 107 S.Ct. 989, 94 L.Ed.2d 40. In *Ritchie,* the United States Supreme Court dealt with the issue of a defendant's right to discover statements made by a minor victim to a children services agency. The *Ritchie* court held that the children services agency was obligated to turn the records over to the trial court for *in camera* review to determine the materiality of such records. *Id.* However, the *Ritchie* court also held that a defendant may not require the trial court to search through confidential records "without first establishing a basis for his claim that it contains material evidence." *Id.* at 58, fn. 15. The *Ritchie* court, quoting *United States v. Valenzuela-Bernal* (1982), 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193, held that a defendant "must at least make some plausible showing of how their testimony would have been both material and favorable to his defense."

In *State v. Allan* (Feb. 2, 1996), 6 Dist. No. L-94-272, the Court noted that "[t]here exists little Ohio case law which discusses the initial showing a defendant must make before he is entitled to an *in camera* review of confidential records by the trial court. However, this issue has been decided in several other states. In *People v. Stanaway* (1994), 446 Mich. 643, 670-677, 521 N.W.2d 557, the Michigan Supreme Court provides a synopsis of the approaches taken by several different states in determining what a defendant must initially show in order to obtain an *in camera* review of confidential records. In general, these states have held there must be some showing that the records do, in fact, contain the alleged information and there must be some showing that the information is relevant to the defense. The *Stanaway* court concluded that a defendant would be entitled to such *in camera* inspection if he or she "has a good faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *Id.* at 677, 521 N.W.2d 557. In *Washington v. Kalakosky* (1993), 121 Wash.2d 525, 550, 852 P.2d 1064, the Washington Supreme Court held that a defendant "must make a particularized showing that [confidential] records are likely to contain material

28

relevant to the defense" prior to requiring the court to conduct an *in camera* inspection".

The Court in *Allan, supra,* held "that a defendant is entitled to the trial court's *in camera* inspection of children services agency records where the defendant shows that there is a reasonable probability, grounded on some demonstrable fact, that the records contain material relevant to the defense".

In the case at bar, appellant sought follow-up therapeutic counseling records of both Lauren and Kimberly. Notably, appellant did not request the trial court conduct an in camera inspection of the records.

The appellant has not cited any statute which requires these records to be disclosed. Accordingly, we agree with the court in *Allan, supra*, that before the appellant is entitled to have the trial court conduct an in camera inspection of the counseling records, he is required to demonstrate that there is a reasonable probability, grounded on some demonstrable fact, that the records contain material relevant to the defense. Appellant has failed in this burden. Accordingly, the trial court correctly refused appellant's request for a release of the counseling records. Further, the trial court was under no duty to conduct an in camera inspection of the records prior to overruling appellant's motion to compel.

Exhibit R to Return of Writ. Again, the decision of the state appellate court is presumed to be correct. *Williams v. Taylor, supra*. The record fails to reflect that the state appellate court's decision is unreasonable so as to justify federal habeas corpus relief.

Petitioner filed a motion to compel discovery of the counseling records of the alleged victims. *Petition,* at 2. The trial court agreed to conduct an *in camera* review of such records, but denied his motion as it related to "follow-up therapeutic counseling." *Id*., at 10. Petitioner argues that, under *Pennsylvania v. Ritchie, supra*, the trial court also had a duty to conduct an *in camera* review of the follow-up counseling records of the alleged victims. According to petitioner, he was denied a constitutionally fair trial when the trial court failed to conduct such *in camera* review as

29

to the follow-up counseling records. *Petition* at 10. As noted by the state appellate court, notably, petitioner never requested the trial court to conduct an *in camera* review of those records. *See* Exhibit R to Return of Writ, *supra*.

In *Pennsylvania v. Ritchie, supra*, 480 U.S. at 52, the United States Supreme Court stated that failure to disclose information that might have made cross examination more effective did not violate the Confrontation Clause:

> The ability to question adverse witnesses... does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. *Delaware v. Fensterer,* 474 U.S., at 20, 106 S.Ct., at 294. In short, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.,* at 20, 106 S.Ct., at 294 (emphasis in original). See also *Ohio v. Roberts, supra,* 448 U.S., at 73, n. 12, 100 S.Ct., at 2543, n. 12 (except in "extraordinary cases, no inquiry into 'effectiveness' [of cross-examination] is required").

*Id.*, at 53. The Supreme Court recognized the importance of protecting the confidentiality of records in child sex abuse cases, holding that *in camera* review by the trial court in such a scenario would also adequately protect the defendants right to information to defend himself against criminal charges arising from such allegations. *Id.*, at 58. The Supreme Court noted that a criminal defendant may not require the trial court to "search through" confidential records

> without first establishing a basis for his claim that it contains material evidence. See *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) ("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense"). Although the obligation to disclose exculpatory material does not depend on the presence of a

30

> specific request, we note that the degree of specificity of [the] request may have a bearing on the trial court's assessment on remand of the materiality of the nondisclosure. *See United States v. Bagley,* 473 U.S. 667, 682-683, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.).

*Id.*, at 58 n. 15.  Thus,

> [t]he clearly established "rule" of *Ritchie,* ... is that, given a privilege ... a defendant is "entitled to have a [government social services] file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial," but only if the defendant has "establish[ed] a basis for his claim that it contains material evidence," *e.g.,* by making "some plausible showing of how [the] testimony would have been both material and favorable to [the] defense."

*Renusch v. Berghuis,* 75 Fed. Appx. 415, unpublished, 2003 WL 22128709 (6th Cir. September 12, 203), citing *Pennsylvania v. Ritchie, supra* (footnote omitted).  As discussed by the state appellate court, petitioner failed to make any such a showing here.

Claim two is without merit.

## V.  CLAIM THREE

In claim three, petitioner asserts that he was denied a fair trial and the right to present a defense because the trial court denied his request for access to the transcript of Lauren Haller's initial interview with police.  The state appellate court rejected this claim as follows:

> Appellant next contends that the trial court erred in not requiring the State to produce the audio tape of the initial interview of Lauren Haller.
>
> The trial court ruled that the information was not subject to disclosure because it was a "witness statement" pursuant to Crim. R. 16(B)(3). (Judgment Entry Granting Motion to Reconsider Order Granting Motion to Compel Filed August 11, 2004, filed Aug. 24, 2004).

31

However, the trial court did allow appellant to provide Dr. Smalldon with the questions the interviewer asked Lauren; Lauren's answers were redacted. (T. at 532). In addition the record discloses that the audio tape was made available to Dr. Smalldon on Sunday, November 7, 2004. (*Id*. at 505). Dr. Smalldon did not testify until Tuesday, November 9, 2004). (*Id*. at 503). Dr. Smalldon offered no reason as to why he was unable to review the audio tape prior to testifying. Appellant did not request a continuance to allow Dr. Smalldon additional time to review the tape.

Crim. R. 16 provides in relevant part:

"(B) Disclosure of evidence by the prosecuting attorney

" * * *

*"(2) Information not subject to disclosure.* Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the "discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents."
Accordingly, the tape recorded interview of Lauren was not subject to disclosure. We would note that any error in failing to provide the audio tape is harmless beyond a reasonable doubt. In addition we note that the tape was in fact made available to appellant's trial counsel prior to the time that Dr. Smalldon testified.

Dr. Smalldon testified as to what, in his opinion, is the proper standard for interviewing a child sexual abuse victim. (T. at 507-514; 562-571). Dr. Smalldon reviewed the police reports, Children's Services records, as well as the redacted interview with Lauren. (Id. at 505; 561). Dr. Smalldon highlighted his concerns to the jury with the interview process based upon the questions the examiner had asked Lauren during the tape-recorded interview. (Id. at 573-575). Dr. Smalldon found the interviewing process of Lauren Haller to be flawed or "tainted." (Id. at 575-76). Dr. Smalldon further testified that "I wouldn't say that there is a single, accepted protocol." (T. at 507; 532). However, Dr. Smalldon further testified that the fact that the protocol was tainted does not necessarily mean that the allegations were fabricated. (Id. at 537-38).

Appellant contends that the answers Lauren gave to the interviewer

would have strengthened Dr. Smalldon's opinion concerning the flawed or tainted interview process. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *United States v. Agurs* (1976), 427 U.S. 97, 109-110, 96 S.Ct. 2393, 2400. The jury heard appellant's experts assail the interview process and discuss the suggestibility of children concerning sexual abuse. Accordingly, appellant was not denied an opportunity to present his defense.

Appellant's Second Assignment of Error is overruled.

Exhibit R to Return of Writ.

Again, petitioner contends that a *de novo* standard of review applies to habeas corpus review of this claim, because the state appellate court reviewed the claim for a violation of Ohio Criminal Rule 16 only, and did not address his claim that the trial court applied Rule 16 "in such a manner that it impaired Christopher Brown's federal constitutional right to defend himself." *See Appellant's Merit Brief*, Exhibit O to Return of Writ, at 11; *Traverse*, at 24.  Petitioner also contends that the state appellate court improperly addressed the claim in the context of harmless error, rather than under the standard of "materiality." *Traverse*, at 24.  However, the appellate court explicitly stated, in rejecting petitioner's claim:

"The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. *United States v. Agurs* (1976), 427 U.S. 97, 109-110, 96 S.Ct. 2393, 2400.  The jury heard appellant's experts assail the interview process and discuss the suggestibility of children concerning sexual abuse. Accordingly, appellant was not denied an opportunity to present his defense.

Exhibit R to Return of Writ.  Thus, this Court is not persuaded by petitioner's argument that the state courts failed to address his federal constitutional claim.  Additionally, even under a *de novo* standard

33

of review, petitioner's claim fails.

The prosecution provided the tape of Lauren Haller's initial statement to police to defense counsel prior to the time that Dr. Smalldon testified.

> [T]he record discloses that the audio tape was made available to Dr. Smalldon on Sunday, November 7, 2004. (*Id*. at 505). Dr. Smalldon did not testify until Tuesday, November 9, 2004). (*Id*. at 503). Dr. Smalldon offered no reason as to why he was unable to review the audio tape prior to testifying. Appellant did not request a continuance to allow Dr. Smalldon additional time to review the tape.

Exhibit R to Return of Writ.

In view of the foregoing, and for the reasons discussed by the state appellate court, claim three is without merit.

## VI.  CLAIM FOUR

In his fourth claim for relief, petitioner asserts that he was denied a fair trial because the trial court consolidated for trial the two indictments against him alleging multiple counts of sexual abuse against Lauren and Kimberly Haller.  The state appellate court rejected this claim as follows:

> [A]ppellant maintains that the trial court erred in consolidating Kimberly Haller and Lauren Haller's cases. We disagree.
>
> Appellant was charged with twenty-four felony sexual crimes against two different children, both of whom were family members. Not only were there two different victims, but the times of the offenses were consecutive and did not overlap. The incidents with Lauren Haller occurred from June 1, 2001 to September 1, 2003. The incidents involving Kimberly Haller occurred From December 1, 2003 to April 15, 2004.
>
> Crim. R. 13 states: "The court may order two or more indictments or informations or both to be tried together, if the offenses or the

34

defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information".

Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka* (1995), 101 Ohio App.3d 564, 577-578, 656 N.E.2d 9. Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, then the trial court is required to order separate trials. Crim.R. 14.

Prejudice is not demonstrated if evidence of one offense would have been admissible as "other acts" evidence under Evid.R. 404(B) or if the evidence of each crime joined at trial is simple and direct. *Lott,* 51 Ohio St.3d at 163, 555 N.E.2d 293. As long as used for purposes other than proving that the accused acted in conformity with a particular character trait, Evid.R. 404(B) permits the admission of "other acts" evidence if it is "related to and share[s] common features with the crime in question ." *State v. Lowe* (1994), 69 Ohio St.3d 527, 634 N.E.2d 616, paragraph one of the syllabus. In particular, evidence of other crimes, wrongs or acts is admissible under this rule if the evidence shows "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other crimes, wrongs or acts is inadmissible merely to show that an accused has the propensity to commit crime. Evid.R. 404(B).

When a defendant claims that he or she was prejudiced by the joinder of multiple offenses, the court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed; and (2) if not, whether the evidence of each crime is simple and distinct. *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, citing *State v. Hamblin* (1988), 37 Ohio St.3d 153, 158-159, 524 N.E.2d 476 and *Drew v. United States* (C.A.D.C., 1964), 331 F.2d 85. "If the evidence of other crimes would be admissible at separate trials, any 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Id.*, citing *Drew v. United States,* 331 F.2d at 90 and *United States v. Riley* (C.A.8, 1986), 530 F.2d 767. Accordingly, we must determine the extent to which evidence of each of these crimes would be admissible in other trials if the counts were severed as requested by appellant.

In discussing the dangers associated with admitting other acts evidence in a case where the offenses included several counts of rape and gross sexual imposition, the *Schaim* court stated:

"The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. * * * This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case. The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. The forcible rape statute and the gross sexual imposition statute both contain subsections that address the admissibility of evidence of other sexual activity by either the victim or the defendant. * * * The legislature has further provided that a court shall resolve the admissibility of other evidence of sexual activity in chambers 'at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.' "(Citations omitted.) Id. at 59-60, 600 N.E.2d 661.

From our review of the evidence, the trial court ruled the acts against the two family members were admissible under R.C. 2945.59 and Evid.R. 404. We find this because: 1) the acts were against family members which began when the children were approximately similar ages, 2) the acts occurred when the children stayed overnight at a residence where appellant was present and 3) all the acts occurred when the children were sleeping. *State v. Ickes* (June 13, 2000), 5 Dist. No.1999AP080052. These facts clearly indicate a "scheme, plan or system" negating any claim of accident. Id. Further, the acts were consecutive in nature, beginning with Lauren and following through to Kimberly. Each victim testified separately. Id. The issues were clearly laid out for the jury, and the jury was instructed that each count and victim should be considered from its own evidence.

Assuming, *arguendo,* that the evidence did not fit the "other acts" exception, it nevertheless fits the second prong of the *Schaim* test which requires the evidence of the crime under each indictment to be simple and distinct. 65 Ohio St.3d at 59, 600 N.E.2d 661. In *State v. Decker* (1993), 88 Ohio App.3d 544, 624 N.E.2d 350, the court found that the evidence was simple and distinct. The evidence achieved

36

these characteristics in part because the crimes involved contained different victims and different witnesses, and therefore, the jury was able to segregate the facts which constituted each crime. *Decker,* 88 Ohio App.3d at 549, 624 N.E.2d 350.

In this case, the prosecution introduced evidence of each distinct crime. Both Lauren and Kimberly testified at length and in specific detail about how the abuse occurred, when it began, and how long it continued. Thus, as in *Decker,* the evidence was simple and distinct because the facts surrounding each crime were capable of segregation.

Accordingly, because appellant was not able to demonstrate that he was prejudiced by the joinder of claims, he cannot meet the first element of the *Schaim* test. Therefore we do not need to address the remaining elements of the test.

Given the facts *sub judice,* we find the trial court did not err in denying the severance motion.

Appellant's Fifth Assignment of Error is denied.

Exhibit R to Return of Writ.

Federal habeas review of state court evidentiary rulings is extremely limited.  *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir.1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.1983). Such are not the circumstances here.

Where a defendant alleges that a denial of due process due to the trial court's refusal to grant a severance of charges against him, he

must show that the misjoinder rendered the trial fundamentally unfair. *Hollands v. Department of Corrections,* 969 F.2d 606 (8 Cir.1992); *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) as cited in *United States v. Chavis,* 296 F.3d 450 (6 Cir.2002). Thus, misjoinder reaches constitutional dimensions only if it makes a state trial unfairly violative of due process. *Herring*

37

> *v. Meachum,* 11 F.3d 374 (2d Cir.1993).
>
> A claimant must show more than the potential for prejudice; he must prove that actual prejudice occurred at trial. *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Thus, Petitioner has no relief under 28 U.S.C. § 2254 unless the consolidation actually rendered the Petitioner's state trial fundamentally unfair and violative of due process. *Tribbitt v. Wainwright,* 540 F.2d 840 (5 Cir.1976), *cert. denied ,* 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977); *Lucero v. Kerby,* 133 F.3d 1299 (10 Cir.1998); *Robinson v. Wyrick,* 738 F.2d 1091 (8 Cir.1984) . The granting or denying of severance is within the trial judge's discretion. *Glinsey v. Parker,* 491 F.2d 337 (6 Cir.1974).

*Dowell v. Eckman*, unpublished, 2006 WL 228933 (W.D.Ky. January 25, 2006). Similarly, here, petitioner simply has failed to establish that the trial court's ruling constituted an error of constitutional dimension.  To the extent that petitioner asserts that consolidation of charges against him constituted impermissible evidence of other bad acts, as discussed by the United States Court of Appeals in *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003),

> There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.

*Id.* (citations omitted.)

Claim four is without merit.

## VII.  CLAIM SIX

In claim six, petitioner asserts that he was denied a fair trial because the trial court refused to grant his request for a continuance on the first day of trial after the prosecutor amended the indictment to change the dates of the crimes charged in counts nine through twelve, as discussed, *supra,* to correct a typographical error.  The state appellate court rejected this claim as follows:

38

In his Fourth Assignment of Error, appellant contends that the trial court erred by not granting his motion to continue the trial after the Court granted the State's motions to amend the Indictment and Bill of Particulars. We disagree.

A reviewing court analyzes a denial of a continuance in terms of whether the court has abused its discretion. *Ungar v. Sarafite* (1964), 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921.

Crim R. 7 concerning the amendment of an indictment states, in relevant part: "no appeal based upon such action of the court [denying a motion for a continuance] shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted". Crim. R. 7 also provides that a defendant is not entitled to a continuance based upon the amendment of the charges if "it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made ..."

In light of our finding that the appellant has not been misled or prejudiced by the defect or variance in respect to which the amendments were made, the trial court correctly overruled appellant's motion for a continuance of the trial date. We find from consideration of the whole proceedings that no failure of justice resulted from the denial of appellant's motion for a continuance.

Appellant's Fourth Assignment of Error is overruled.

Exhibit R to Return of Writ.  Again, petitioner has simply failed to establish that the state appellate court's decision is unreasonable so as to justify federal habeas corpus relief.  28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.*

The decision whether to grant a motion for continuance is within the discretion of the trial judge. *See Ungar v. Sarafite,* 376 U.S. 575, 589-90, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Absent proof of a violation of a specific constitutional protection, a habeas petitioner must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process. *See Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). A petitioner must also show that the denial of his

> request resulted in actual prejudice to his defense. *See United States v. Moreno,* 933 F.2d 362, 372 (6th Cir.1991). Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense. *See United States v. Martin,* 740 F.2d 1352, 1361 (6th Cir.1984).
>
> Among the factors to be considered by the court in determining whether a continuance was properly denied are the length of the requested delay; whether other continuances had been requested and granted; the convenience or inconvenience to the parties, witnesses, counsel and the court; whether the delay was for legitimate reasons or whether it was "dilatory, purposeful or contrived;" whether the defendant contributed to the circumstances giving rise to the request; whether denying the continuance will result in identifiable prejudice to defendant's case; and the complexity of the case. *See United States v. Burton,* 584 F.2d 485, 490-91 (D.C.Cir.1978).

*Powell v. Collins*, 332 F.3d 376, 397 (6th Cir. 2003).

Petitioner again argues that he was denied notice of the charges against him and the ability to defend himself because the trial court permitted the prosecutor to amend the indictment to correct a typographical error regarding the dates charged in counts nine through twelve in Case Number 04CR-I-06-255 (involving alleged victim Lauren Haller), from alleging that illegal conduct occurred between June 1, 2003, and September 1, 2003, to alleging that the illegal conduct occurred between June 1, 2001, and September 1, 2003. As noted previously, petitioner's allegation as it pertains to count nine is moot, since the trial court dismissed that charge against him. As to the remainder of the charges, for the reasons discussed previously, this Court agrees with the conclusion of the trial court, that the trial court's refusal to grant a continuance on the first day of trial did not prejudice petitioner or his defense.

Claim six is without merit.

## VIII.  CLAIM SEVEN

40

In claim seven, petitioner asserts that he was denied the effective assistance of counsel because his attorney conducted unreasonable investigation by inadequately interviewing alleged victim Kimberly Haller, failing to interview alleged victim Lauren Haller; failing to file a pre-trial motion to dismiss Lauren Haller's statement as flawed or tainted; failing to object to inadmissible evidence; failing to conduct adequate cross examination; and erroneously calling Clyde Haller as a defense witness.  The state appellate court rejected this claim as follows:

> In his Sixth Assignment of Error appellant claims he was denied effective assistance of trial counsel. We disagree.
>
> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
>
> In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley,* 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
>
> In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bradley,* supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered

41

by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697. Accordingly, we will direct our attention to the second prong of the *Strickland* test.

Appellant first claims that counsel was ineffective in failing to interview the two complaining witnesses before trial. Appellant does not articulate how questioning the witnesses prior to trial would have resulted in a different outcome or trial strategy.

Upon our review of the record, trial counsel thoroughly cross-examined Lauren (T. at 198-231; 245-47) and Kimberly (T. 386-96). Counsel presented an expert witness and five (5) lay witnesses on appellant's behalf. (T. at 550; 606; 636; 642; 645). Appellant testified on his own behalf. (Id. at 714).

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. *See Strickland,* 466 U.S., at 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (counsel is 'strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. *See Bell, supra,* at 702, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914; *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland, supra,* at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". *Yarborough v. Gentry* (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6, 157 L.Ed.2d 1.

The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." *State v. Myers* (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.

Appellant has further failed to demonstrate that there exists a reasonable probability that, had counsel interviewed Lauren and Kimberly prior to trial, the result of the trial would have been different. Appellant's second contention is that trial counsel was ineffective because he did not file a motion to dismiss the indictments. Appellant contends that because his expert witness testified that the interview with Lauren Haller was flawed or tainted the indictment could have been dismissed.

42

A review of the record indicates that counsel['s] decision not to seek a pre-trial taint or suggestibility hearing was the result of a tactical decision. In response to defense counsel's suggestion concerning the testimony of appellant's expert witness, the prosecuting attorney noted that if the appellant was going to request a suggestibility hearing, the State "will pull in our own expert ... I do need to talk to Julie Brahms and see when she's available because she's who we usually use ..." (T., Aug. 9, 2004 at 20; 22).

In addition, the trial court was not obligated to dismiss the indictments because appellant's expert testified that the interviewer did not utilize the proper protocol in questioning the victims. Dr. Smalldon testified that "I wouldn't say that there is a single, accepted protocol." (T. at 507; 532). Dr. Smalldon further testified that the fact that the protocol was tainted does not necessarily mean that the allegations were fabricated. (Id. at 537-38, 780 N.E.2d 186).

The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." *State v. Myers* (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.

Appellant has further failed to demonstrate that there exists a reasonable probability that, had counsel filed a motion to dismiss the indictments prior to trial, the result of his case would have been different.

Appellant next contends that trial counsel was ineffective in failing to object to hearsay evidence from the State's witness. Appellant fails to set forth the precise statements he claims trial counsel was ineffective in failing to object to; nor does appellant articulate how the statements prejudiced his case.

Appellant's trial counsel did note a continuing line of objection based upon *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 to any statements made to the mother of the victim as well as any other witness. (T. at 58). The trial court overruled trial counsel's motion to prohibit such testimony. (Id. at 60-61). Appellant has not argued nor assigned as error in his appeal the trial court's overruling of defense counsel's motion to exclude the testimony.

As trial counsel did object and attempt to have the testimony declared

inadmissible, appellant's argument that counsel was ineffective in failing to object to the testimony is misplaced.

Even if admission of the statements could be considered erroneous, we would conclude, from a review of the entire record, that such error would be 'harmless beyond a reasonable doubt.' *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Harrington v. California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *Schneble v. Florida* (1972), 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340.

Appellant next contends that trial counsel was ineffective in failing to renew his request for a copy of the grand jury transcripts of the victims, and in failing to cross-examine Kimberly Haller concerning the difference in dates between her statement to Detective Penrod and her trial testimony.

In light of our disposition of Appellant's First and Third Assignments of Error, *supra*, Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel renewed the motion to disclose the grand jury testimony and cross-examined Kimberly Haller concerning the discrepancy in the dates on which the incidents occurred, the result of his case would have been different.

In his final contention, appellant claims he was rendered ineffective assistance of counsel because trial counsel presented the testimony of Clyde Haller, the father of Lauren Haller and grandfather of Kimberly Haller. He claims that the witness admitted many damaging facts to appellant's case. (T. at 610-11; 620; 622; 626; 629).

An attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. See, e.g., *State v. Coulter* (1992), 75 Ohio App.3d 219, 598 N.E.2d 1324. This Court will not second-guess every aspect of the defense attorney's presentation of the case.

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. *See Strickland,* 466 U.S., at 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (counsel is 'strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. *See Bell, supra,* at 702, 535 U.S.

685, 122 S.Ct. 1843, 152 L.Ed.2d 914; *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland, supra,* at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". *Yarborough v. Gentry* (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6, 157 L.Ed.2d 1.

The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." *State v. Myers* (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217. Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel not called Clyde Haller as a witness, the result of his trial would have been different.

Accordingly, Appellants Sixth Assignment of Error is overruled.

Exhibit R to Return of Writ. As discussed, the decision of the state appellate court is presumed to be correct. 28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.* Petitioner has failed to establish that the state court's decision is unreasonable so as to justify federal habeas corpus relief.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because the petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Petitioner first asserts that he was denied the effective assistance of counsel because his attorney unreasonably failed to interview alleged victim Lauren Haller prior to trial, and asked Kimberly Haller only ten questions that were unrelated to the charges against him, after the trial court granted the defendant's motion to conduct pre-trial interviews of the alleged victims. *Petition,* at 23-24; *Traverse,* at 43. Petitioner contends that the state appellate court's rejection of this claim constituted a "post hoc rationalization" used to insulate defense counsel from claims of ineffective assistance. *Traverse*, at 48. This Court does not agree.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington, supra*, 466 U.S. at 490-91.  As noted by the state appellate court, defense counsel exercised what appears to have been a reasonable strategic decision not to question the alleged victims prior to trial.  At a minimum, such questioning could have helped to prepare the victims for later cross-examination.  Further, the record indicates that defense counsel had available to him summaries of the alleged victims' statements from other sources, so that the interviews would not have been the only source of information about their testimony.  Lastly, petitioner has not shown any specific prejudice resulted from defense counsel's failure to question the alleged victims prior to trial.

Petitioner next asserts that he was denied the effective assistance of counsel because his attorney failed to file an allegedly meritorious motion to dismiss Lauren Haller's trial testimony as impermissibly tainted by improper pre-trial interview techniques.  *Petition*, at 24-25; *Traverse*, at 44.  Petitioner suggests that the state appellate court's decision denying this claim is unreasonable because "there is nothing in the record that indicates the reasons for counsel not filing a motion to suppress [Lauren Haller's trial testimony]."  Again, petitioner's argument is not persuasive.

As noted by the state appellate court, defense counsel may have sought to avoid presentation of a prosecution expert witness that would refute the testimony of his defense expert.  Further, petitioner has failed to point to any record evidence indicating that such a motion would have been meritorious.  Defense expert Smalldon stated that it was his opinion, upon reviewing only the questions made to Lauren Haller in her initial statement, that the interview process had been "flawed" or "tainted."  *Transcript,* at 575.  He did not state that her allegations appeared to be fabricated as a result.  *See id.*, at 583.  Further, nothing in the record indicates that transcript of Haller's initial statement to authorities would have changed Smalldon's opinion so as to render

Lauren Haller's testimony inadmissible at trial. When the issue is simply one of credibility, it is unlikely that the trial judge would have barred the testimony altogether.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to object to various out-of-court statements made by witnesses at trial. He appears to contend that some, or all, of such statements violated the Confrontation Clause and *Crawford v. Washington*, 541 U.S. 36 (2004). *Petition*, at 26-27; *Traverse*, at 44-45. This claim may be procedurally defaulted because petitioner failed to "set forth the precise statements he claims trial counsel was ineffective in failing to object to" and did not assign as error on direct appeal the trial court's overruling of his motion to prohibit statements on the basis of Crawford. *See* Exhibit R to Return of Writ. However, procedural default is an affirmative defense, *see Trest v. Cain*, 522 U.S. 87, 89, (1997); *Gray v. Netherland,* 518 U.S. 152, 166 (1996), that was not raised by respondent here. This Court therefore will address the merits of petitioner's claim.

Specifically, petitioner complains that his attorney failed to object to testimony by Sharon Thibault that Lauren Haller told Thibault petitioner had molested her,

> (Q. Did [Lauren Haller] disclose to you what had been happening to her?
>
> [Sharon Thibault]: She did.)

*Transcript,* at 67; testimony by Brenda Greenhalgh, mother of alleged victim, Lauren Haller, regarding statements made by Lauren and Brittany regarding petitioner's alleged sexual abuse, *id.*, at 122-127; 131;[2] and testimony by Wendy Haller, mother of alleged victim, Kimberly Haller,

---

[2] Brenda Greenhalgh stated:

regarding Wendy's conversation with Kimberly Haller.  *Id.*, at 257;[3]

Petitioner also complains of testimony by Wendy Haller regarding statements by Cassie Brown, petitioner's wife:

> Q.  How did [Cassie] react to what you told her [about allegations of sexual abuse]?
>
> A.  She was very upset; She said she didn't know what she was going to do.  She said she didn't know if she was going to have to sell the house and divorce Chris.  She wasn't sure where to react at this point, what her next step should be.  She was taking it all in.

Id., at 260.  Petitioner also objects to unidentified testimony by Wendy Haller, id., at 261, presumably as follows:

---

Initially Britney had made the statement to Lauren – Well, Lauren told me that she made the statement to her, "Oh, My God, I didn't know this was happening to you."  But almost immediately after that, she became defensive and she became adversarial.  She accused Lauren of lying; she didn't handle it very well and she also said she didn't know what to believe.

*Transcript*, at 131.  The name "Brittany" is spelled differently throughout the trial transcript.

[3]  Wendy Haller stated:

[My husband] said, "Lauren is stating that Chris has been touching her; that he has been... kissing her breast and going down in her pants, is what he had heard from Cassie.

I said, Okay.  Then I went upstairs and Kimberly was in her room and Katy was in her room.  I shut Kimberly's door and asked her, I said... "has anybody been touching you in your bathing suit area?"  She immediately looked to the ground and did not look up at me and did not answer the question.

So that struck me... as odd.  I asked the question again.... And she looked up and said, "Chris does."

*Id*., at 257.

> I said, "Do you know why I asked you these questions"?  And
> [Kimberly] said, "No."  I said "Because Lauren said the same thing."

*Id.*, at 261.  Testimony by Craig Haller, father of alleged victim, Kimberly Haller:

> I was contacted by my sister Cassie.  She had told me that my sister,
> Lauren, had told her that – Lauren had told Cassie that Chris had
> been touching her and Cassie didn't know what to do.  She was very,
> you know, confused.

*Id.*, at 279.

> A lot of things were going through my mind at the time, so I had
> asked Kimberly, you know, how this happened; When it happened
> and asked her, I said, "Does it happen when you're play wrestling;
> Does it happen... did he accidentally bump into you?"  She said, "No,
> Dad, he touched me."  I said, "When does he touch you?"  She told
> me, "When we're watching t.v."  I said, "Well, was his arm just
> draped on you?"  She said, "No, dad, he actually touches me."  I
> said... "When does this happen?"  She told me when Cassie falls
> asleep.

*Id.*, at 282.   Petitioner complains of testimony by Jenna Kitchen, an intake investigations worker

with Delaware County Children Services who initially interviewed Kimberly Haller as follows:

> When I asked her why she was there – if she knew why she was
> there to talk to me, she said she did, that it was because of what Chris
> Brown had done.  And I asked her to talk about that a little bit and
> she gave me some information.  She thought there was [sic] three or
> four incidents that took place at his home when she and her younger
> sister and her aunt, Cassie... were all present at his home in the living
> room watching t.v.  She was able to identify for me that he had
> touched her breasts and also touched her genitalia area on three or
> four occasions.

> Q.  Now, did she get that all out in one sentence, or did you have to
> prompt her to say any of that?

> A.  No, I had to question her.  I mean she was uncomfortable and talking about it.  I mean, she did say because of what Chris did and that he had touched her and I had asked her to tell me how he had touched her and she would say, "Well, he touched me here and here," and rub her hand across her lap and across her chest.  And I had to ask where it happened and that's where she gave me the living room of his home and who was present.  That's when she gave me her younger sister.... Katy and herself and Cassie and Chris were all present.  I basically asked her to explain to me how the incidences would occur and that's when she said they would be laying on the floor, watching t.v. and he would reach over underneath her shirt and underneath her bra and touch her....

*Id.*, at 303-304.

> [Detective Penrod] basically went about in the same way that I would do, he initially started talking to her about softball and his kids were involved in sports and talked a little while about things like that; just building rapport with her, and he explained his role and how it differs from mine as far as Children's Services and how law enforcement goes and kind of went back over things with her and what she said and tried to get more specific details regarding the time frame.  She had a difficult time identifying for me when exactly it happened.  She knew the first time, I think it was December or January sometime.  And Detective Penrod asked her... "Do you think it was before Christmas or after Christmas?" ...

*Id.*, at 307.  Petitioner likewise complains about testimony by Detective Penrod regarding his interview with Kimberly and Craig Haller as follows:

> I asked her questions.  She said, "He touched me down there."  I said, "How did he touch you?"  She said, "He rubbed it."  I said, "How did he rub it?"  And she says, "I don't know."  At that point I believe I used my hand and I said, "Do you know what that area looks like down there?"  She said, "Yes."

*Id.*, at 416.

> Craig advised that a couple of weeks before – at that time I don't

51

> believe he gave me a date of when he was contacted by his sister, Cassie Brown and Cassie had given he or his wife, I don't remember which he said, information that Lauren Haller was making allegations against her husband, Christopher Brown, and she wanted Craig and Wendy to talk to Kimberly about it, and Katy.

*Id.*, at 418.

> Q. ... Did you ever interview... Jeff Haller... or Matt Haller?

> A.  No....

> Q.  Why didn't you?

> A.  In talking to Kim about when the incidences occurred and who was in the house during the time of the incidents, she indicated that there were only four people in the house, herself, Katy, Chris and Cassie.  So there was no indication that either Jeff or Matt Haller were in the residence during any of the incidents.

*Id.,* at 430.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial.  *Illinois v. Allen,* 397 U.S. 337, 388 (1970). On March 8, 2004, the United States Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), abrogated *Ohio v.Roberts,* 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court held in *Crawford v. Washington, supra,* that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity for cross-examination:

> Where testimonial evidence is at issue ... the Sixth Amendment

52

> demands what the common law required: unavailability and a prior
> opportunity for cross examination.

*Id.,* at 1366. However,

> [t]he Court explicitly left untouched the application of *Roberts* to
> cases involving nontestimonial hearsay: "Where nontestimonial
> hearsay is at issue, it is wholly consistent with the Framers' design to
> afford the States flexibility in their development of hearsay law-as
> does *Roberts,* and as would an approach that exempted all such
> statements from Confrontation Clause scrutiny altogether."
> *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the
> courts applying *Crawford* have observed,

> [t]he lynchpin of the *Crawford* decision thus is its distinction between
> testimonial and nontestimonial hearsay; simply put, the rule
> announced in *Crawford* applies only to the former category of
> statements.... [U]nless a particular hearsay statement qualifies as
> "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico,* 414 F.Supp.2d 744, 773 (E.D. Michigan 2006), citing *United States v. Hendricks,* 395

F.3d 173, 179 (3d Cir.2005); *Horton v. Allen,* 370 F.3d 75, 83-84 (1st Cir.2004); *United States v.*

*Johnson,* 354 F.Supp.2d 939, 964 (N.D.Iowa 2005); *United States v. Savoca,* 335 F.Supp.2d 385,

391-92 (S.D.N.Y.2004). The Supreme Court declined to spell out a comprehensive definition of the

term "testimonial," but stated that, at a minimum, the term includes

> prior testimony at a preliminary hearing, before a grand jury, or at a
> former trial; and to police interrogations. These are the modern
> practices with closest kinship to the abuses at which the
> Confrontation Clause was directed.

*Crawford v. Washington, supra,* 124 S.Ct. at 1374. A causal remark to an acquaintance, business

records, and statements made in furtherance of a conspiracy do not constitute testimonial statements

subject to the strictures of the Sixth Amendment. *Id.,* at 13645, 1367. Further,

> [t]he admission of a testimonial statement in and of itself is not

53

> enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted.

*United States v. Pugh,* 405 F.3d 390, 399 (6th Cir.2005).  A violation of the Confrontation Clause is subject to harmless error review. *Id.,* at 400, citing *Jordan v. Hurley,* 397 F.3d 360, 363 (6th Cir.2005).

> Unless a constitutional error has a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)), it will be considered harmless.

*Dorchy v. Jones,* 398 F.3d 783, 791 (6th Cir.2005).

The Court notes that some of the foregoing testimony referred to by petitioner does not constitute impermissible hearsay evidence that violates the Confrontation Clause within the meaning of *Crawford, supra.*  That said, as noted by the state appellate court, review of the entire record reveals that none of the foregoing testimony complained of prejudiced petitioner under the second prong of *Strickland.*  All of the testimony referred to was cumulative to that presented by other witnesses or subject to cross examination of defense counsel.  The Court is simply not persuaded that, had all of the challenged statements been excluded, or had the trial court given a limiting instruction (which, for many of these statements, would have been the likely ruling on any objection because the statements may well have been admissible for non-hearsay purposes), the jury would have been any less likely to convict petitioner.  Further, counsel may not have wanted the objection and limiting instruction to place more emphasis on these statements and may legitimately have chosen not to object for that reason.

Petitioner next asserts that he was denied the effective assistance of counsel because his attorney failed to use the report of Detective Penrod or the First Amended Bill of Particulars to cross examine Kimberly Haller on her inconsistent statements regarding the details of her allegations against petitioner.  Petitioner also asserts that counsel improperly failed to renew his request for a copy of the grand jury testimony of the alleged victims so that he could impeach them with inconsistencies between their trial testimony and the grand jury testimony.  Upon review of the entire record, this Court agrees with the conclusion of the state appellate court that petitioner has failed to establish prejudice from any error by defense counsel in this regard.

On cross examination, Lauren Haller admitted that she told Margaret Sodentani that petitioner started molesting her when she was seven or eight, but that was incorrect.  The abuse did not begin until she was nine or ten.  *Transcript*, at 73.  Brittany thought Lauren was lying.  *Id.*, at 76.  Lauren could not remember any details about any of the nights she stayed with petitioner.  *Id.*, at 78-80.  She was unsure about all of the dates at issue.  *Id.*, at 78-79.

> I don't remember.  It's hard to remember years.
>
> Q.  It's hard to remember when you go backwards, right?
>
> A.  Well, yeah.
>
> Q.  Because all the questions you were asked was going from the first date it happened forward; correct?
>
> A.  Well, no, that's not hard.  It's hard to just remember.  I mean, first because it was all at night.  So I couldn't tell if it was winter or summer outside.  That's why I can't remember that because I just remember it being dark.  I'm sure if anybody tries to remember what year something happened, if it wasn't, like if you're trying to forget it for a long time, and it happened many times, I doubt that they'd be able to say ever single day of every single year that it happened.  I

even have a hard time –

*Id.*, at 80-81.  She thought petitioner was "fun."  She spent Christmases with him and his wife.  *Id.*

She came to Ohio to visit her father, yet she chose to stay with Cassie and petitioner.  *Id.*, at 84.

Nobody forced her to visit petitioner and Cassie, but her father lived far away from their house and

did not want to pick them up late at night.  *Id.*, at 85.  She told herself that it wouldn't happen again

and continued staying with them for five or six years.  *Id.*, at 85-86.  Her allegations had changed

significantly at trial:

> Q.  You made an allegation yesterday against Chris that he also put
> his tongue on the top of your vagina?
>
> A.  Yes.
>
> ***
>
> Q.  Through all of the disclosures that you made previously, you
> never mentioned that to anyone?
>
> A.  No.

*Id.*, at 86.  Her allegations changed each time she discussed what had happened.  "[S]ometimes when

I'm asked to tell it, I will forget things, but I'll remember other things.  And so it mostly stays the

same but sometimes I'll remember more specifics, but I'll forget some specifics too."  *Id.*  She did

not know what year the incident in the chair took place.  *Id.*, at 88.  Brittany was present on the chair

or the couch next to her during some of the incidents she had alleged, about two to four feet away.

*Id.*, at 91.

On cross examination by defense counsel, Kimberly Haller also admitted that she had not

told Detective Penrod and Jenna Kitchen the same version of the events as that she testified to in court. *Transcript,* at 144.

> I didn't tell them like the whole story.  I only told them like the parts
> I could remember.

> Q.  But you told them that Cassie was on the couch each time;
> correct?

> A.  I can't remember.

*Id.*, at 144-145.  She couldn't remember how often she had stayed at petitioner's home during the time period at issue.  *Id.*, at 145.  She couldn't remember "any time frame all" for the last incident. *Id.*, at 147.  She thought it was in 2004, but could not remember the month that it took place.  *Id.*

> Q. Do you remember any holidays it might have happened around?

> A.  Huh-uh.

> Q.  What about the second time or the time prior to that; do you
> remember when that happened?

> A.  I just know it happened three times in between December and
> February.

> Q. The last incident that happened., can you go ahead and describe
> what happened then?

> A. ... We spent the night and he had touched me in those certain
> places and that's it.  That['s] all I remember.

*Id.*, at 147-148.  She denied telling Detective Penrod "that Chris put his finger inside," or such an incident had occurred.  *Id.*, at 148.  She couldn't remember what she had told Detective Penrod.  She

admitted that she had not told Penrod that she had her period during one of the incidents alleged, as she had testified to at trial.  *Id.*  She couldn't remember what movie she had been watching during the second incident she described, when the incident took place, or who exactly was in the room. *Id.*, at 150.  She admitted that she asked to stay with petitioner and his wife.  She played Play Station with petitioner.  *Id.*, at 151.  She spent holidays with them.  *Id.*, at 152.  She never told Lauren about what had happened.  *Id.*, at 153.

In sum, defense counsel brought out on cross examination the inconsistencies and the lack of precision and detail in the alleged victims' accusations and in their prior statements to authorities. The record does not indicate that defense counsel was ineffective under either prong of *Strickland* by failing to further cross examine the victims by use of either Detective Penrod's report or the first amended Bill of Particulars, or that the state appellate court's decision rejecting this claim is unreasonable so as to warrant federal habeas corpus relief.  *See Williams v. Taylor, supra*.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney called Clyde Haller, the father of the alleged victim, Lauren Haller, as a defense witness.  Petitioner argues that there could have been no reasonable trial strategy in calling Clyde Haller as a defense witness and because Clyde Haller's testimony did nothing to assist the defense, and only hurt petitioner's case.  This Court does not agree.

Clyde Haller was the father of Lauren and grandfather of Kimberly Haller.  His daughter, Cassie Brown, was married to petitioner and they all lived together for approximately three and one half years.  *Transcript*, at 607, 612.  Clyde said that Lauren and Brittany generally slept on the couch in the basement, or on the floor of the living room, when they came to visit him.  *Id.*, at 613-615. His bedroom was only about fifteen feet from the living room.  *Id.*, at 615.  He never observed any

inappropriate behavior by petitioner. *Id.*, at 616. Lauren loved Cassie and "seemed to like [petitioner] real well." *Id.* The couch on which Lauren testified that the sexual abuse occurred was located only about ten feet from the bed in which Cassie slept. *Id.,* at 617. Clyde Haller also stated that he was "sick" about the allegations of sexual abuse, and felt that he should have done more to protect his daughter and granddaughter. *Id.,* at 620. Cassie often went to sleep earlier than the girls or petitioner did. *Id.*, at 626-627. In the summer of 2004, Lauren did not visit him because she did not want to see petitioner. *Id.*, at 622.

> Counsel's decision to call, or not to call, a particular witness is a strategic decision generally not subject to review. *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir.1997).... "Decisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy...." *Chegwidden v. Kapture,* 92 Fed.Appx. 309, 311 (6th Cir.2003). *See Cathron v. Jones,* 77 Fed.Appx. 835, 841 (6th Cir.2002) ( "[u]nder *Strickland,* we must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy" ). A trial counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See McQueen,* 99 F.3d at 1311; *O'Hara,* 24 F.3d at 828. Accordingly, petitioner must overcome a presumption that the challenged action might be considered sound trial strategy. *Id.*

*Taylor v. Jones,* 2006 WL 3231260 (W.D. Michigan November 7, 2006).

Petitioner has failed to meet either prong of *Strickland* based upon his attorney's decision to call Clyde Haller as a defense witness. It is clear that Mr. Haller did provide some favorable testimony, particularly that he never observed any inappropriate behavior by petitioner. The unfavorable parts of his testimony appear to be cumulative to other testimony and not particularly prejudicial. Thus, counsel neither acted ineffectively in calling this witness nor prejudiced petitioner by doing so.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's motion to expand the record, Doc. No. 24, is **GRANTED** in part and **DENIED** in part.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

```
                    /s/ Terence P. Kemp
                    United States Magistrate Judge
```